

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| SHERI N. RAWSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:98-CV-0371 |
| | § | |
| JO ANNE BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Plaintiff SHERI N. RAWSON, brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant JO ANNE BARNHART, Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of disability, and disability benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

### I.
### THE RECORD

Plaintiff applied for supplemental security income benefits (SSI) and disability insurance benefits under Titles II and XVI of the Social Security Act on September 6, 1996, with a protected filing date of August 21, 1996 for her SSI application. (Transcript [hereinafter Tr.] 55-

57; 164-168[1]; 183). Plaintiff traces her disabilities to a motor vehicle accident which occurred on June 14, 1978, such date being the onset date listed in the record. (Tr. 55, Plaintiff's Brief at 4). Plaintiff suffered injuries as a result of the motor vehicle accident including severe damage to her right upper extremity, right elbow, pelvis and injuries to her head and face. (Plaintiff's Brief at 4).[2] Plaintiff was born February 1, 1954 (Tr. 55), and possesses a high school degree as well as a two-year college degree in interior design. (Tr. 67).[3]

Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on September 30, 1997. (Tr. 19-33). On October 23, 1997, ALJ Herbert J. Green rendered an unfavorable decision, finding plaintiff not entitled to benefits at any time relevant to the decision. (Tr. 10-18). Plaintiff appealed such decision both to the Appeals Council and then to this Court. The merits of the case were not addressed by this Court because defendant was unable to produce the administrative record. (Tr. 198; 201-202). On May 30, 2000, the case was remanded pursuant to sentence six of §205(g) of the Social Security Act of 42 U.S.C. §405(g) for a *de novo* hearing on plaintiff's claims. (Tr. 204, 206-207).

On September 11, 2002, a *de novo* administrative hearing was held and on November 29, 2002, ALJ Green once again rendered an unfavorable decision, finding plaintiff not entitled to benefits at any time relevant to the decision. (Tr. 183-189). The ALJ determined plaintiff, "has

---

[1] According to the Court Transcript Index, Transcript pages 164 through 168 are plaintiff's "SSI Application for Supplemental Security Income Benefits filed August 21, 1996." (Tr. 2). However, for whatever reason, pages 164 - 179 were not available for inclusion in the record. (Tr. I).

[2] Plaintiff lists a severe injury to her *left* upper extremity in her brief but according to the record, it is her *right* upper extremity which was so severely injured.

[3] In completing the section "Information About Your Education" at Tr. 67, plaintiff stated she had completed "4 years college 1976" but then right below such statement she recites, "Interior Design 1974-1976." At the administrative hearing held on September 11, 2002, plaintiff testified she had an Associate Degree in Interior Design which was a 2 year degree. (Tr. 244).

not engaged insubstantial gainful activity since June 14, 1978" and that she "has no past relevant work." (Tr. 188, Findings #2 and #7 respectively). Further, the ALJ determined plaintiff, "has retained the residual functional capacity for sedentary work limited by blindness in one eye, and the use of the right upper extremity as a block only, and no constant use of either extremity." (Tr. 188, Finding #6). In making such findings the ALJ determined plaintiff could perform a significant numbers of jobs in the national economy including information clerk, food and beverage order clerk, and surveillance systems monitor. (Tr. 188, Finding #11). On November 3, 2003, pursuant to defendant's motion, the case was reopened in this Court.

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are

to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

## III.
## ISSUES

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the national economy, and whether the proper legal standards were applied in reaching this decision. To this extent, plaintiff presents the following issue:

> The Commissioner's decision that Ms. Rawson was not disabled was not supported by substantial evidence in that the ALJ failed to demonstrate at the fifth step of the sequential process that there is other work in the regional or national economy that Ms. Rawson can perform despite her impairments.

## IV.
## MERITS

This social security plaintiff was injured in an automobile accident on June 14, 1978. (Tr. 714). As a result of injuries plaintiff received in the wreck, she was treated at Northwest Texas

Hospital in Amarillo from June 14, 1978 until her discharge on July 29, 1978. (Tr. 137-155).[4] During that period of time, plaintiff was treated for "cerebral contusions, multiple scalp and facial lacerations, fracture of the right maxilla, fracture of the right ulna and radius, fracture of the pelvis, fracture of the left femur, fracture of the right tibia and fibula, severe cerebral contusions and right hemiparesis.[5] (Tr. 137). It appears that on August 6, 1978, plaintiff was treated at St. Anthony's Hospital and on that date, the rod which had been placed in the shaft of her left femur was removed. (Tr. 122, 124). Thereafter on April 15, 1979, plaintiff was again admitted to the hospital, this time for removal of a bone plate and multiple screws from her right tibia. (Tr. 126). At the time, plaintiff was discharged "improved," but it was noted she had, "residual paralysis of right hand and arm with chronic dislocation of the head of the right radius." (*Id.*).[6] It is not disputed that plaintiff recovered from the majority of her injuries post-accident. Plaintiff's position in this appeal appears to be that her deformed and virtually useless right arm, as well as her right eye blindness, render her unable to perform sedentary work as found by the ALJ. (Plaintiff's Brief at 4-5).

Preliminary Issue - Title II Benefits

As a preliminary issue, not briefed by either party, the ALJ found plaintiff's Title II claim to be time barred. Specifically, the ALJ found,

---

[4] The Court notes that the hospital records found at Tr. 149-155 appear to be related to this accident but are illegible.

[5] "Hemiparesis" is defined as, "muscular weakness or partial paralysis affecting one side of the body." *See* Dorland's Illustrated Medical Dictionary (29th ed. 2000).

[6] There is also a notation indicating plaintiff had "brain damage from previous injury." (Tr. 126). Upon examination by Dr. Dennis A. Ice of the Neuroscience and Spine Center on May 13, 2002, the doctor noted there was, "apparent traumatic brain injury resulting in spasticity of the right upper extremity with some decrease in sensation of the extremity. [But that] gross mental status appears to be normal." (Tr. 236).

> On review of the evidence of record, I have concluded that the claimant may have been entitled to a distant <u>closed</u> period of disability between June 14, 1978 and August 5, 1979, if the limiting provisions of 20 C.F.R. §404.320(b)(3) did not prohibit such a delayed finding of disability. However, the claimant is time-barred from establishing eligibility for a period of disability and disability insurance benefits under Title II of the Act, because she filed her application more than twelve months after the date the prior period of disability <u>would</u> <u>have</u> ceased, <u>if</u> indeed she was then disabled. In the absence of any physical or mental condition preventing her from timely filing an application for disability benefits, consideration of that period of time for a period of disability is time-barred. 20 C.F.R. §04.320.

(Tr. 185). Because neither party appears to disagree with the ALJ decision in this regard, it is the opinion of the undersigned that plaintiff's Title II claim for benefits is time barred and should be denied.

### Issue #2
### Other Work In The National Economy

Plaintiff's next argument relates to the ALJ finding that she could perform work which exists in significant numbers in the economy. The ALJ explained that the plaintiff was considered a "younger person" at 48 years of age, and that she possessed a college education. (Tr. 186). The ALJ determined that plaintiff had no past relevant work. (*Id.*). Finally, the ALJ concluded that plaintiff, "retains the residual functional capacity for sedentary work, limited by her blindness in one eye, and the need to use the right arm as a block only and no constant use of the upper extremity." (Tr. 187). Based upon Vocational Expert (VE) testimony, the ALJ ascertained plaintiff could perform the job duties of information clerk, with 33,000 jobs in the national economy; order clerk (food and beverage), with up to 30,000 jobs in the national economy; or as a surveillance system monitor, with up to 81,000 jobs in the national economy. (Tr. *Id.*).

Plaintiff argues that in determining there are sedentary jobs plaintiff can perform, the ALJ failed to address the concerns of SSR 96-8p and SSR 96-9p when assessing plaintiff's RFC. (Plaintiff's Brief at 10). Plaintiff argues,

> [T]he ALJ made little or no effort to make findings compatible with Plaintiff's ability to perform all of the strength demands of sedentary work. The ALJ failed to address Plaintiff's ability to perform any of the listed exertional and nonexertional requirements or whether she could perform these demands on a regular and continuing basis....The ALJ makes no mention of the fact that Ms. Rawson is right-hand dominant[7] and that she is severely limited in her lifting abilities with this dominant right hand.

(Id. At 11). Plaintiff contends the ALJ's hypothetical, "makes no mention of Ms. Rawson's blindness in one eye and 'claw-like feature of her right hand' and her inability or her severely restricted ability to use her right hand for fine motor skills." (Plaintiff's Brief at 15). A review of the record shows the ALJ's hypothetical was as follows,

> For what (sic) you assume an individual of the Claimant's age, education and work experience. I want you to assume further that the individual is limited to sedentary work. The individual can use the non-dominant arm as a block arm. The individual has no constant use of the dominant upper extremity.[8]
> ....
> Okay. Mr. Taylor [VE], can an individual who is blind in one eye do all the jobs you mentioned?

To which the VE responded affirmatively. (Tr. 249-250). Clearly, the ALJ's hypothetical did take into account blindness in one eye. Further, the ALJ did refer to the fact that plaintiff's right arm could only be used as "block arm" and that she did not have constant use of the upper left

---

[7] Plaintiff categorizes herself as right-hand dominant but by her own testimony, she has been forced to use her left arm as the dominant one for many years.

[8] Plaintiff seems to have misunderstood the ALJ's hypothetical. It appears she assumed the ALJ referred to the left arm as the non-dominant, block arm and that the ALJ referred to the right arm as the dominant upper extremity. (Plaintiff's Brief at 15). As stated *supra*, plaintiff's right arm has not been her dominant arm for many years. By his finding #6, the ALJ made it clear he referred to the right arm when he categorized it as a "block arm," therefore by deduction, this was also the non-dominant arm. (Tr. 188).

extremity. The true issue, as briefed by plaintiff, is not a blanket sufficiency of the evidence argument, but whether the ALJ fulfilled his duties, as mandated by SSR 96-8p and SSR 96-9p.

SSR 96-8p sets forth a policy interpretation for assessing RFC in initial claims under Titles II and XVI. Under the subtitle of "Purpose," the SSR states that an RFC assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The SSR sets forth what an ALJ must consider in making an RFC assessment at Step 5 of the sequential evaluation, as well as what functions and/or capacities the RFC must address. The SSR also requires a narrative discussion be included in an RFC assessment and sets forth the requirements for said narrative.

SSR 96-9p sets forth a policy interpretation for situations where a claimant is limited to a partial range of sedentary work and sets forth guidelines for evaluating the ability to do less than a full range of sedentary work, including when consultation of a vocational resource would be appropriate.

Social Security Rulings are agency rulings published "under the authority of the Commissioner of Social Security" and "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1) (2000); *see also Heckler v. Edwards*, 465 U.S. 870, 873 n. 3, 104 S.Ct. 1532, 79 L.Ed.2d 878 (1984) (citing Social Security Ruling stating that "[o]nce published, a ruling is binding on all components of the Social Security Administration.... Rulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same. A ruling may be

superseded, modified, or revoked by later legislation, regulations, court decisions or rulings.").

In this case, in 1996 after plaintiff filed for benefits, she was sent for a consultive examination with Dr. W. Glenn Friesen. After the case was remanded, plaintiff was again sent for an examination, this time with Dr. Dennis A. Ice in May of 2002. (Tr. 186). The ALJ set forth, in his opinion, the findings of both doctors, including some of plaintiff's functional limitations recited by Dr. Ice, *i.e.*, those limitations with regard to balancing, climbing, stooping, crouching, kneeling, and crawling. (*Id.*).

Plaintiff is correct in her argument that the ALJ failed to specifically set forth in his opinion, the analysis conducted with regard to the functional limitations or restrictions and the assessment of work-related abilities on a function-by-function basis. This, unfortunately, is a recurring problem in many of the social security cases on appeal to this Court. The better practice would be for the ALJ to include a recitation of his analysis as described in the rulings. Defendant is also correct, however, that plaintiff has failed to show prejudice. As stated in *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996),

> We also find that Brock has failed to show that he was prejudiced by the ALJ's alleged failure to fully develop the record. To establish prejudice, a claimant must show that he could and would have adduced evidence that might have altered the result. Brock points to no evidence that, had the ALJ developed the record further, would have been adduced at the hearing and that could have changed the result. We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges.

(Internal quotations and citations omitted). Likewise, in the instant case, plaintiff has failed to demonstrate what evidence, listed in a function-by-function analysis, would have resulted in a different outcome. Plaintiff, by her own testimony, stated she was able to drive a car, cook and

clean, grocery shop, and that she had helped her husband with bookkeeping at his job. (Tr. 246-247). Dr. Ice, in his May 13, 2002 assessment stated,

> The patient is unable to lift or carry anything greater than 10 pounds and mostly with her left upper extremity. Walking is about two hours in an eight hour work day. She is able to sit without difficulty. I would not recommend that she climb, balance, stoop, crouch, kneel, or crawl due to visual problems. She could probably kneel and crawl occasionally and crouch without much difficulty, but as far as any types of balancing activities these are contraindicated. She will have problems reaching, handling, fingering, pushing and pulling and seeing because of her eye and right upper extremity problems. She should not work around heights or moving machinery. Temperature extremes both (sic) her face. This patient has sustained a serious injury and has compensated well for it. She should be able to [do] light duty types of activities that don't require a lot of repetitive use of the upper extremities.

(Tr. 236). It appears from the record the ALJ relied on the assessment completed by Dr. Ice and presumably the function-by-function analysis contained therein.

Finally, plaintiff stated that while she had applied for jobs, she was turned down, "because the people that I've applied to for a job, they said that the insurance would cost too much for me to help them." (Tr. 247). When asked why she felt she could not perform the job of food and beverage order taker, plaintiff stated it was due to her inability to hold a phone with one hand and take an order with the other. (Tr. 250). When asked what would happen if she were provided a headset plaintiff replied, "Oh, I don't know. But I don't know." (*Id.*).

While the Court is sympathetic to plaintiff's predicament, and agrees the ALJ should have articulated his analysis better, it cannot be said that plaintiff has shown she was prejudiced by the ALJ's failure to do so. Plaintiff suffers from blindness in one eye and the loss of use of one arm. However, as articulated by the ALJ and by defendant, she has been, throughout the period in question, self sufficient and able to complete all of her household tasks and even assist

her husband in his work. Plaintiff has argued she cannot find employment in her hometown, but this is not the standard. The Administration has taken testimony from a VE and has enunciated several jobs in the national economy plaintiff could perform. Plaintiff has failed to satisfactorily rebut this evidence. For the above reasons, plaintiff's application should be denied and the administrative decision affirmed.

## V.
## RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner be AFFIRMED.

## VI.
## INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to plaintiff's attorney of record and to the Assistant United States Attorney by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___14th___ day of April 2005.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation. Service is complete upon mailing, Fed. R. Civ. P. 5(b), <u>and</u> the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed**. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).